UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JEROME CROSBY,
WALLACE PEACE, et al.,

Defendants.

**Hon. Hugh B. Scott**

08CR186A

Report
&
Recommendation

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 8, Aug. 8, 2008). The instant matter before the Court is defendants' separate omnibus motions, some of which seek suppression of statements, suppression of evidence, and a motion to dismiss counts as to certain defendants (e.g., Docket Nos. 292 (Jerome Crosby), 256 (Patrick Perry), 250 (Wallace Peace)[1]). Some of these motions were filed under the initial Indictment and were renewed when the Superseding Indictment was filed.

Addressed herein is the motion to suppress statements and other non-discovery relief sought by Wallace Peace ("Peace") (Docket No. 250); a separate Report and Recommendation will consider codefendants' suppression motions. The Government filed an omnibus response

---

[1] Some of the defendants have entered pleas following the filing of their respective motions. Defendant Amos Dean also moved for relief, Docket Nos. 239, 290, but later entered into a plea agreement, see United States v. Dean, No. 08CR212, Docket No. 24; as did Terry Izzard, Docket Nos. 183 (motion), 325 (plea agreement), Shawn Stevenson, Docket Nos. 152 (motion), 354 (plea agreement), Mario Vance, Docket Nos. 170, 171, 173 (motions), 353 (plea agreement).

(Docket No. 314) to all of the moving defendants' motions and leave was granted, nunc pro tunc, to allow filing of an excessive memorandum. Oral argument of these motions was heard on January 8, 2010, and evidentiary hearings were ordered for February 8, 2010 (text minute entry, Jan. 8, 2010). Peace's suppression hearing was commenced on February 25, 2010 (Docket No. 364, transcript), continued through March 15, 2010 (Docket No. 365, transcript; text minute entry, Mar. 15, 2010), and completed on March 23, 2010 (Docket No. 351, transcript; text minute entry, Mar. 23, 2010). Peace's post-hearing submission was due by June 15, 2010, and the Government's post-hearing response was due by June 29, 2010 (Docket No. 371). Peace filed a timely post-hearing memorandum (Docket No. 380), which the Government responded to (Docket No. 392). The motion was argued on July 13, 2010, and the motion was deemed submitted after filing additional briefing on July 23, 2010 (text minute entry, July 13, 2010). The Government filed its submission (Docket No. 400), distinguishing this case from Lynumn v. Illinois, 372 U.S. 528 (1963), a case relied upon by Peace. Peace then filed his timely submission (Docket No. 401), wherein he argues that the totality of the circumstances–his family's distress during the police entry and search, his prior conviction, his desire to avoid police attention upon his family, and the agent's invitation that he "help himself"–all show psychological coercion (id. at 2-3).

Also pending (and addressed in a separate Order) are Peace's (Docket No. 249) and other codefendants' omnibus motions for discovery relief or joinder in codefendants' motions[2].

---

[2]In addition to many of the motions cited above, Docket Nos. 257 (Perry), 182 (David Degree), 152 (Shawn Stevenson), 277, 286 (David Long, latter a joinder motion), 173 (Mario Vance), 159 (Christopher Adams), 297, 300-05 (Woodie Johnson), filed omnibus motions while other defendants filed motions joining in these, Docket Nos. 288 (Victor Peoples), 187 (Demetrius Johnson), 277 (Darryl Parker), 285 (Marcus Gaskin).

**BACKGROUND**

This case now involves 30 defendants (29 of whom are now before this Court[3]) arising from a Drug Enforcement Administration and Buffalo Police Department investigation of alleged drug trafficking and related criminal activities of Peace, Patrick Perry, and Jerome Crosby in the spring of 2008.

The Government characterizes (see Docket No. 314, Gov't Response at 2) this case as arising from an extensive narcotics trafficking investigation, where the grand jury initially returned an 86-count Indictment (Docket No. 1) against 27 defendants. Later that Indictment was superseded by the present 109-count Indictment (Docket No. 190) against 30 defendants. Most of the counts (Counts 2-92) in the Superseding Indictment charge violations of 21 U.S.C. § 843(b), using a communications facility (a telephone) in causing and facilitating the commission of acts constituting possession with intent to distribute, distribution, and conspiracy to distribute cocaine and cocaine base, listed in the Indictment as a table of defendants, the dates and times of their alleged felonious conversations.

In April 2008, the Drug Enforcement Administration ("DEA") with the Buffalo Police Department investigated the criminal activities of Peace and his alleged criminal associates (Docket No. 314, Gov't Response at 3). In June and July of that year, Buffalo Police officers and DEA agents obtained New York State eavesdrop orders for telephones used by Peace, Patrick Perry and Crosby, whom the Government contends are the lead defendants in this case (id. at 3, 2). The Government contends that the evidence would show that Peace headed "an active

---

[3]One defendant from the initial Indictment, James Jackson, had that Indictment dismissed as to him, Docket No. 3, and was not charged in the Superseding Indictment. Due to a conflict, another defendant, Antoine Callahan, appeared before Magistrate Judge Schroeder.

cocaine distribution organization operating in and around Buffalo," that he handled day-to-day distribution as well as operating a group of youths to conduct home invasions and robberies of rival drug dealers (id. at 4). Peace also allegedly trafficked in weapons and contacted other drug suppliers, such as Patrick Perry (id. at 4-5). The investigation revealed that Patrick Perry had a supplier by the name of Jerome Crosby who had been traveling to New York City in June and July 2008 to acquire kilogram quantities of cocaine (id. at 5). Arrest and search warrants were executed on July 29, 2008 (id.). This suppression motion arises from the execution of these warrants.

*Peace's Suppression Motion*

Defendant Peace seeks to suppress statements made during his arrest. At the suppression hearing for this motion, the Government called Buffalo Police Department Detective Johnny Walker and the federal Bureau of Alcohol, Tobacco and Firearms ("ATF") agent Thomas Rodriguez, while Peace called Mrs. Vernell Peace, his wife. On July 29, 2008, the Buffalo Police Department executed a search warrant at 967 Northland Avenue, Buffalo, New York. Detective Walker testified that, after SWAT team officers entered and secured the premises, he entered and saw a female and some children who were really upset due to the shooting and killing of their dog. (Docket No. 380, Def. Post-Hearing Memo. at 3; Docket No. 364, Feb. 25, 2010, Tr. at 5, 9, 14, 48-49, hereinafter "Feb. Tr."; Docket No. 392, Gov't Post-Hearing Memo. at 1.) Detective Walker was directed to Peace, who was handcuffed and with other police officers in an upstairs bedroom (Docket No. 364, Feb. Tr. at 6; Docket No. 380, Def. Post-Hearing Memo. at 3; Docket No. 392, Gov't Post-Hearing Memo. at 2). Detective Walker asked Peace if there were any drugs or guns in the house and Peace answered that there was a gun

4

under the bed and drugs in the closet (Docket No. 364, Feb. Tr. at 5-6, 10-11; Docket No. 380, Def. Post-Hearing Memo. at 3; Docket No. 392, Gov't Post-Hearing Memo. at 2). With a drug sniffing dog, officers retrieved the gun and drugs (Docket No. 364, Feb. Tr. at 6; Docket No. 392, Gov't Post-Hearing Memo. at 2). Peace then was advised of his <u>Miranda</u> rights (Docket No. 364, Feb. Tr. at 7, 6-8, 11-12; Docket No. 380, Def. Post-Hearing Memo. at 3). Detective Walker asked if Peace wanted to make a statement and Peace said that he wanted to speak to someone, so Detective Walker got ATF agent Rodriguez who then spoke with Peace (Docket No. 364, Feb. Tr. at 7, 11; Docket No. 380, Def. Post-Hearing Memo. at 3; Docket No. 392, Gov't Post-Hearing Memo. at 3). Agent Rodriguez testified that he took Peace's written statement (Docket No. 364, Feb. Tr. at 23; Docket No. 380, Def. Post-Hearing Memo. at 3; Docket No. 392, Gov't Post-Hearing Memo. at 4, Ex. A), with Peace initialing changes on that statement and signing it at the end (Docket No. 392, Gov't Post-Hearing Memo. at 4, Ex. A). Agent Rodriguez twice asked Peace if he had been advised of his rights and Peace assured him that he had been (Docket No. 364, Feb. Tr. at 22, 23; Docket No. 392, Gov't Post-Hearing Memo. at 4).

Detective Walker testified that he did not threaten or coerce Peace into making a statement (Docket No. 364, Feb. Tr. at 7-8, 11; Docket No. 392, Gov't Post-Hearing Memo. at 3).

Peace's wife, Vernell, testified that Detective Walker returned from upstairs and threatened her and the children with arrest if her husband did not cooperate with the police (Docket No. 365, Tr. of Mar. 15, 2010, at 56, hereinafter "Mar. Tr."; Docket No. 392, Gov't Post-Hearing Memo. at 5); Detective Walker denies this charge (Docket No. 364, Feb. Tr. at 11, 14-15; Docket No. 392, Gov't Post-Hearing Memo. at 5). Peace did not testify.

Peace now argues that his statements should be suppressed because his initial admissions as to the location of the drugs and firearm were made before he was advised of his Miranda rights, since he was in custody and being interrogated when he made those admissions (Docket No. 380, Def. Post-Hearing Memo. at 4). As for his statements following being advised of his rights, Peace argues that they were coercive and should be suppressed (id. at 4-5). He emphasizes as part of the coercion the threat of arrest of his wife and children (id. at 7).

**DISCUSSION**

I. Suppression of Statements

Peace moves to suppress statements he allegedly made upon his arrests (Docket No. 250, Atty. Aff. ¶¶ 59-60; Docket No. 380, Peace Memo. of Law at 4-8; see Docket No. 314, Gov't Response, at 49). The Government states that, after being advised of his rights, Peace made admissions to possessing and distributing drugs, possessing a firearm and doing so during drug trafficking (Docket No. 314, Gov't Response, at 49).

    A.    Initial, Pre-Miranda Statements

First, as for Peace disclosing the location of drugs and guns prior to being advised of his Miranda rights, the Government concedes that Peace's pre-warning statement to Detective Walker is inadmissible (Docket No. 392, Gov't Post-Hearing Memo. at 7 n.4), but argues about its impact on Peace's post-warning statements (id. at 7). Therefore, Peace's motion to suppress this statement should be **granted**.

    B.    Alleged Coerced Statements

Looking at the totality of the circumstances surrounding Peace's post-advisement statements, see Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988), even accepting Peace's

6

verison that Mrs. Peace was threatened with arrest by Detective Walker if Peace did not cooperate (which Walker denies), the chronology does not support the conclusion that Peace was coerced by this threat. Peace was making his statements to agent Rodriguez before or while Detective Walker was speaking with Mrs. Peace. Peace now argues only that it is "logical and reasonable to infer that Detective Walker" threatened Peace with the arrest of his wife and children if he did not cooperate, but provides no proof of such a conversation took place. Even if it did, the alleged threat occurred outside of Peace's presence and could not have affected his cooperation, see Moran v. Burbine, 475 U.S. 412, 422 (1986) ("Events occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right") (Docket No. 392, Gov't Post-Hearing Memo. at 13). This is readily distinguishable from Lynumn v. Illinois, 372 U.S. 528 (1963) (see Docket No. 400, Gov't's Supp'al Response at 1-4), and United States v. Tingle, 658 F.2d 1332 (9th Cir. 1981), relied upon by Peace (cf. Docket No. 380, Def. Post-Hearing Memo. at 7; Docket No. 401, Def. Supp'al Memo. at 3). In both cases, the defendants were expressly threatened with the removal of their children if they did not cooperate, Lynumn, supra, 372 U.S. at 531; Tingle, supra, 658 F.2d at 1334 (Docket No. 401, Def. Supp'al Memo. at 3). As the Government notes (Docket No. 400, Gov't's Supp'al Response at 3), there is no evidence that Peace was told that his family would be arrested or taken away if he did not cooperate, there were no threats expressed to Peace himself. Unlike the almost menacing scenario in Lynumn, 372 U.S. at 530-34 (id. at 2-3), or the interrogation in Tingle, 658 F.2d at 1334, where the agent expressly threatened the suspect with losing her child if she did not cooperate, the evidence in

this case shows cooperation and calm (id. at 3-4). Peace's wife and children were never mentioned to him by the agent.

Factors for determining the voluntariness of a confession after being advised of his rights include the character of the accused, conditions of the interrogation, and the conduct of the interrogating officers, see Green, supra, 850 F.2d at 901-02; see also Schneckloth v. Bustamone, 412 U.S. 218, 226 (1973). Viewing these factors, the Court agrees that Peace has not shown that he is of the type to be overborne by authority to render his subsequent statements the product of coercion (see Docket No. 392, Gov't Post-Hearing Memo. at 8-9). The interrogation occurred in the bedroom of Peace's home, not an coercive environment, see Oregon v. Elstad, 470 U.S. 298, 315 (1985), and happened over a relatively brief period of time (little more than 45 minutes, see id. at 9). The only alleged activity by Detective Walker was the alleged threat he made to Mrs. Peace, which (as discussed above) Peace was not aware of, and the killing of the family's dog by SWAT officers upon their entry into Peace's home. Peace, after being advised of his Miranda rights, voluntarily said that he wanted to talk and rendered an inculpatory statement to agent Rodriguez, noting corrections and ultimately signing it. Even if this statement was made in response to the officer's question whether Peace wanted to "help yourself out" (Docket No. 380, Def. Post-Hearing Memo. at 5, quoting, Docket No. 364, Feb. Tr. at 11; see also Docket No. 400, Gov't's Supp'al Response at 4-5), that statement was not the product of coercion, see United States v. Bye, 919 F.2d 6, 7, 9-10 (2d Cir. 1990); United States v. Vera, 701 F.2d 1349, 1364-65 (11th Cir. 1983); United States v. White, 493 F.2d 3, 5 (5th Cir. 1974). Either the threat (of implicit consequences to his family if he failed to cooperate) or promise (of improving his situation if he cooperated) from the statement that he could "help himself out" was not coercive.

Peace replies that the totality of the circumstances here makes his statement in response to this invitation to "help himself out" coercive (Docket No. 401, Def. Supp'al Memo. at 2-3). As he states (id. at 2), to find a confession to be involuntary it must be under circumstances that the defendant's will was overborne, United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991); see Lynumn, supra, 372 U.S. at 534. Looking at the totality of the circumstances here, defendant's will was not overborne by the authorities. There is no connection between the invitation to Peace to "help himself out" and any contact with his wife and family. Even if Peace rendered his statement in consideration of his family, he made no expression of that either in his statement or in evidence he submitted at the hearing.

Although arising in the consent to search context, United States v. Medico, 557 F.2d 309, 312 (2d Cir. 1977), is informative. In that case, the defendant claimed that there was "strong evidence of implicit psychological coercion" to void her consent to search where she was "[u]nder the power of drugs, with an hysterical daughter, her husband just arrested by the F.B.I., cut off from consulting with her friend, . . . with perhaps as many as ten agents in her apartment, with threats being made about the fact that 'we don't want to take a mother from her child,'" id. The Second Circuit held that, while the defendant there was "undoubtedly psychologically vulnerable," id., there was "no evidence that F.B.I. agents took advantage of this weakness by the use of subtle or overt pressure to secure her cooperation," id. The court rejected as an implicit threat the statement made to her that "we don't want to take a mother from her child" when it was preceded by the agents stating that they did not intend to arrest her and that the defendant did not think the agent meant the challenged statement as a threat, id. The court distinguished this situation from the one found by the Seventh Circuit in United States v. Bolin, 514 F.2d 554, 559

9

(7th Cir. 1975), where the consent given in Bolin was held not to be voluntary because the police said that the suspect's girlfriend would not be arrested if he consented to the search, Medico, supra, 557 F.2d at 312 n.3. The Second Circuit concluded in Medico that she "freely and voluntarily" gave her consent, id. at 313.

In another search and seizure case, United States v. Marotta, 326 F. Supp. 377, 379-81 (S.D.N.Y. 1971), the defendant testified that the agent conducting the search of his parents' apartment told him that if the agents searched and found firearms that defendant's parents would be held responsible. The district court stated that, if this were true, it would not hold defendant's actions were voluntary and freely undertaken, id. at 380. The court, however, rejected defendant's testimony on this point but held that the Government failed to meet its heavy burden of proving, by clear and convincing evidence, that defendant voluntarily and freely consented to the seizure, id. at 381.

Agents here did not subject Peace to psychological coercion or trickery in obtaining his statement. As in Medico, 557 F.2d at 312, there is no evidence of the agents using subtle or overt pressure upon Peace to compel his statement. At the most, there may have been implicit threat arising from the situation (police, wife, and children in house, contraband found therein, and the need to resolve the matter without involving the family), but not from the action of the police officers and agents, save in the execution of the warrant in the first place. Therefore, Peace's motion to suppress these statements should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that defendant Wallace Peace's motion seeking suppression of statements and other relief (Docket No. 250), be **granted** as to Peace's pre-warning statement as to whether he had guns or drugs on the premises and **denied** as to his post-warning statements (including his written statement), as described above.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott<br>Hon. Hugh B. Scott<br>United States Magistrate Judge

Dated: Buffalo, New York
August 5, 2010